**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TYRONE SMITH,

  Petitioner,      Civil No. 2:14-CV-14656
            HONORABLE VICTORIA A. ROBERTS
v.           UNITED STATES DISTRICT JUDGE

STEVEN RIVARD,

  Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS
CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS***

  Tyrone Smith, ("Petitioner"), confined at the Carson City Correctional Facility in

Carson City, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254.  In his *pro se* habeas petition, Petitioner challenges his conviction and sentence for

two counts of armed robbery, M.C.L.A. § 750.529; first-degree home invasion, M.C.L.A.

§ 750.110a(2); assault with intent to commit criminal sexual conduct involving sexual

penetration, M.C.L.A. § 750.520g(1); possession of a short-barreled shotgun or rifle,

M.C.L.A. § 750.224b; felon in possession of a firearm, M.C.L.A. § 750.224f; possession

of a firearm during the commission of a felony (felony-firearm), M.C.L.A. § 750.227b;

and assault with intent to do great bodily harm less than murder, M.C.L.A. § 750.84.  For

the reasons that follow, the petition for a writ of habeas corpus is DENIED.

1

# I. Background

Petitioner was convicted following a jury trial in the Genesee County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from the assault and robbery of the 63-year-old victim, Carrie Mance. Mance lived with Alfred Jackson, whom she had a relationship with for 41 years. Mance went to sleep at approximately 5:00 a.m. on June 3, 2010, and left the patio door cracked open. She testified that she woke to find defendant in her bedroom, sitting on the floor, going through her purse. It was later discovered that Mance was missing money and a cellular telephone. Mance testified that defendant told her to lie down when he noticed that she was awake. Mance observed a shotgun on top of the television in her bedroom. Defendant covered Mance's head with the comforter and started beating her head with his fists. Mance testified that defendant continued to beat her, rubbed her buttocks, and penetrated her rectum with his finger. Mance testified that she had never met or seen defendant before the assault and robbery occurred.

> Eventually, Mance was able to escape and run to the front of the apartment where Jackson was sleeping on the couch. Defendant followed Mance and ordered Jackson to give him money. When Jackson did not immediately comply, defendant went through Jackson's pockets and took his money. Defendant pulled Mance back into the bedroom, told her to get on the bed, and started to beat her again. Mance testified that defendant suddenly stopped beating her and stated that he was shot. Defendant ran from the bedroom. Mance followed defendant and observed Jackson and defendant struggling over the shotgun. Mance saw defendant kick Jackson in the ribs. Defendant fled the apartment with the shotgun, and Mance called 911.

> Police responded to the apartment complex. Defendant was discovered lying face down in the threshold of the door to an apartment unit in another building that was in the same apartment complex as Mance's apartment. Defendant was with Larry Montgomery, who called defendant his cousin. Mance's cellular telephone was recovered from inside the apartment where defendant was discovered. Montgomery directed the police to a shotgun that was in a

2

bush outside of the apartment building. Montgomery was endorsed as a witness by the prosecution, but did not appear at trial. The prosecution informed the trial court that it could not locate Montgomery and defense counsel requested a missing witness jury instruction. A due diligence hearing was held, and the trial court concluded that the prosecution exercised due diligence and denied defense counsel's request for the instruction.

Defendant was transported to a hospital, and arrested later that day. Defendant was interviewed by police twice, once at the hospital and once while he was in the county jail. Defendant initially denied touching Mance, but later admitted to touching her buttocks. Defendant claimed that Mance initiated the contact, and he denied penetrating her rectum. Defendant admitted to stealing Mance's money, but claimed he did so when she was in a different room. Defendant also admitted stealing a cellular telephone, but denied robbing Mance and Jackson. Defendant denied bringing the shotgun into the house, but admitted carrying it out of the house.

*People v. Smith*, No. 302093, * 1-3 (Mich.Ct.App. Mar. 15, 2012).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 492 Mich. 867, 819 N.W.2d 870 (2012).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Smith,* No. 10-27247-FC (Genesee County Circuit Court, Oct. 23, 2013). The Michigan appellate courts denied petitioner leave to appeal. *People v. Smith,* No. 319499 (Mich.Ct.App. Apr. 7, 2014); *lv. den.* 497 Mich. 903, 856 N.W.2d 5 (2014).

Petitioner seeks a writ of habeas corpus on the following grounds: (1) The trial judge failed to obtain a valid waiver of counsel from Petitioner, (2) The prosecutor's failure to produce an endorsed *res gestae* witness, denying Petitioner the right to a fair trial; (3) The reasonable doubt instruction was defective, and (4) the admission of other acts evidence denied Petitioner a right to a fair trial.

3

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim–
>
> > (1)      resulted in a decision that was contrary to, or involved
> > an unreasonable application of, clearly established Federal
> > law, as determined by the Supreme Court of the United
> > States; or
> > (2)      resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has

on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000).  An "unreasonable application" occurs when "a state court decision unreasonably

applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A

federal habeas court may not "issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination

that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists

4

could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III. Discussion

### A. Claim # 1.   Denial of a right to counsel at a critical stage of the proceedings and lack of a knowingly and intelligent waiver.

Petitioner claims that he did not knowingly and intelligently waive his right to counsel before representing himself during portions of his trial. Petitioner claims that the judge failed to comply with M.C.R. 6.005(D)'s requirements for obtaining a valid waiver of counsel. Petitioner argues that his waiver was invalid because he was not sufficiently warned of the dangers of self-representation or of the penalties for the charged offenses.

The Michigan Court of Appeals addressed the facts surrounding Petitioner's claim:

> At the beginning of trial before the jury was selected, defendant asked the trial court if he could cross-examine the witnesses himself. The trial court stated that the decision should be discussed between defendant and defense counsel. The trial court cautioned defendant regarding self-representation by

5

telling defendant "just be careful, because [defense counsel] is a professional at this; and it's like anything else, you know, if you've never changed a tire, don't start trying to change one now, you know what I'm saying?" The trial court also informed defendant that ultimately "the answer would have to be yes" if defendant was sure that he wanted to cross-examine witnesses himself.

Defense counsel gave an opening statement, and then informed the trial court that defendant had indicated he wanted to cross-examine the first witness, Mance, himself. Defense counsel stated that he thought it was a bad idea. The trial court asked defendant whether he wanted to cross-examine Mance and defendant answered in the affirmative. The trial court asked defendant if he discussed the decision with his attorney, and informed defendant that he would be held to the same standard as a lawyer with regard to cross-examination. After defendant affirmed that he was sure he wanted to cross-examine Mance, the trial court stated that it would allow it. Defendant proceeded to conduct cross-examination of Mance, and managed to impeach her with inconsistent testimony from the preliminary examination and the police report.

Defense counsel continued representing defendant when the prosecution called its next witness; however, defendant conducted the cross-examination of a police officer witness on the third day of the trial. After the prosecution finished its direct examination of the officer, the trial court addressed defendant and asked if he was going to be conducting the cross-examination, and defendant answered "yes." The trial court then stated: "We've done it once before, but, sir, you understand you have the right to an attorney. You have the right to court appointed counsel if you cannot afford an attorney; do you understand that?" Defendant responded he did understand and that he had elected to conduct the cross-examination. The trial court asked defendant if he had discussed his decision with defense counsel and defendant indicated that he had. The trial court again asked defendant if he understood what his rights were, and defendant answered affirmatively. The trial court reminded defendant that he could consult with defense counsel, and asked defendant if he had any questions for defense counsel. Defendant indicated that he did not have any questions. The trial court asked defense counsel if he felt he had enough time to talk to defendant about his right to counsel, and defense counsel replied that he "thinks" defendant understands. Defendant was then permitted to cross-examine the officer. Defense counsel did not say anything on the record during the time that defendant cross-examined either the officer or Mance.

6

Defendant also gave his own closing argument. Before the trial court allowed him to proceed with closing, the trial court reminded defendant that he had a right to counsel, and asked defendant if he understood his right to counsel. Defendant answered affirmatively. The trial court reminded defendant that defense counsel was available for guidance, and asked defendant if he had enough time to talk to defense counsel. Defendant answered affirmatively and again indicated he intended to conduct the closing argument. Defendant was then permitted to make his own closing argument.

*People v. Smith,* No. 302093, *4-5.

The Michigan Court of Appeals ruled that the waiver of counsel was invalid because Petitioner was inadequately informed of the dangers of self-representation, nor was he warned of the maximum possible prison sentences or any mandatory minimum sentences, as required by M.C.R. 6005(D). *Id.* at 5. The Michigan Court of Appeals then determined that the deprivation of counsel was a nonstructural error subject to a harmless error analysis because Petitioner was not deprived of counsel throughout the entire proceeding, but only through portions of the trial. *Id.* at 5-6. The Michigan Court of Appeals concluded that the deprivation of counsel was harmless as follows:

In this case, we conclude that the error was harmless beyond a reasonable doubt. Defendant's representation of himself was apparently beneficial to his defense considering the fact that the jury was unable to reach a verdict on the criminal sexual conduct charge and the charge was accordingly dismissed after the trial. Further, the evidence supporting defendant's convictions was overwhelming. The victim specifically identified defendant as the perpetrator and testified to his criminal conduct, defendant was located in the apartment complex where the victim lived, and defendant admitted to being in the victim's apartment that night. Accordingly, in light of the fact that defendant's self-representation resulted in the dismissal of one of the most serious charges against him and the overwhelming evidence of his guilt, we conclude that the error was harmless beyond a reasonable doubt. Accordingly, reversal is not warranted.

7

*Id.* at 6.

Petitioner's claim that the trial court violated the provisions of M.C.R. 6.005(D) before accepting his waiver of counsel does not entitle him to habeas relief. It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)(quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Petitioner's claim that the trial court violated the provisions of M.C.R. 6.005(D) is non-cognizable on habeas review. *See Cage v. Rapelje,* No. 08–13104, 2011 WL 3518163, p. 7 (E.D. Mich. Aug. 12, 2011).

Petitioner contends that his waiver of the right to counsel was invalid because he was not warned of the dangers of self-representation nor was he advised of the penalties of the crimes that he was charged with prior to representing himself.

Before a criminal defendant waives his or her right to counsel, he or she "should be made aware of the dangers and disadvantages of self-representation," so that the record establishes that the defendant knows what he or she "'is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835 (1975)(quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

Petitioner did not waive his right to counsel. Petitioner's trial counsel made the opening argument and questioned several witnesses. Petitioner cross-examined two witnesses and made the closing argument. Petitioner's case involves a form of "hybrid representation," in which Petitioner continued to be represented by counsel but conducted portions of his defense. A judge has the discretion to allow hybrid

8

representation. *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984).  A criminal defendant who proceeds with hybrid representation, as Petitioner did in this case, does not clearly and unequivocally invoke his or her right to counsel and thus the *Faretta* warnings are not required. *See United States v. Cromer*, 389 F.3d 662, 681–83 (6th Cir.2004).  In the absence of any Supreme Court precedent which requires that a defendant must be warned of the risks of self-representation before proceeding with hybrid representation, the trial judge's failure to adequately warn Petitioner's of the dangers of self-representation does not entitle him to relief. *See Childress v. Booker*, No. 14-1676, 2015 WL 3814788, *1-2 (6th Cir. June 19, 2015).

Assuming that Petitioner was required to waive his right to counsel in order to represent himself during portions of the trial, the waiver was valid. [1]

A waiver of the Sixth Amendment right to counsel is valid only when it reflects "an intentional relinquishment or abandonment of a known right or privilege." *Patterson v. Illinois*, 487 U.S. 285, 292 (1988)(quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  A defendant's waiver of his right to counsel must "be knowing, voluntary, and intelligent." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004).  The waiver must be "done with sufficient awareness of the relevant circumstances." *Id*. at 81 (internal quotation marks omitted).  It is the criminal defendant's burden to prove that he or she "did not

---

[1] Although the Michigan Court of Appeals found the waiver to be invalid, this Court does not need to defer to that court's pro-petitioner resolution because the AEDPA's standard of review is a "precondition to the grant of habeas relief [ ], not an entitlement to it." *See Daniels v. Lafler*, 501 F.3d 735, 740 (6th Cir. 2007).

competently and intelligently waive" his or her right to the assistance of counsel. *Id*. at 92.

The Supreme Court, however, has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Tovar*, 541 U.S. at 88.  The information that a criminal defendant must have in order to make an intelligent election "will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id*.  The failure of a district court in a federal criminal case to give a particular prophylactic warning and conduct a particular inquiry in determining whether a defendant should be permitted to waive his or her right to counsel does not in and of itself require reversal of a conviction. *See U.S. v. McDowell*, 814 F.2d 245, 248-49 (6th Cir. 1987).  There is no clearly established federal law, as determined by the Supreme Court, which requires any specific colloquy to determine whether a defendant's waiver of counsel was made with "eyes open." *Mack v. Holt*, 62 F.App'x. 577, 580 (6th Cir. 2003); *see also Sullivan v. Pitcher*, 82 F.App'x. 162, 165 (6th Cir. 2003)(a formal inquiry into a defendant's desire to proceed *pro se* "is not a sine qua non of constitutional waiver").  The failure of a district court in a federal criminal case to give a particular prophylactic warning and to conduct a specific inquiry before accepting a waiver of counsel does not in and of itself require reversal of a conviction. *McDowell*, 814 F.2d at 248-49.

Petitioner contends that he was not adequately warned of the dangers of self-

10

representation because he was not informed by the trial judge of the special skills and education needed for effective legal representation.  At the beginning of trial, when Petitioner indicated that he wanted to cross-examine some of the witnesses, the trial judge warned Petitioner to "just be careful, because [defense counsel] is a professional at this; and it's like anything else, you know, if you've never changed a tire, don't start trying to change one now, you know what I'm saying?"  When Petitioner later indicated that he wanted to cross-examine Ms. Mance himself, his counsel on the record opined that this was "a bad idea."  Petitioner was warned by the trial judge that he would be held to the same standards as an attorney when he cross-examined the victim.  Petitioner was given adequate warning by the judge and his counsel about the folly of representing himself at trial.  Although the trial judge could have more thoroughly warned Petitioner about the dangers of self-representation, in the absence of any clearly established Supreme Court law concerning any specific colloquy about the dangers of self-representation, particularly in a case of hybrid representation, Petitioner would not be entitled to habeas relief.

Petitioner further claims that his waiver was invalid because he was not informed of the penalties for his various crimes by the judge prior to representing himself.

In *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948), a plurality of four Supreme Court justices suggested that a trial judge before accepting a waiver of the right to counsel from a defendant should make a "penetrating and comprehensive examination of all the circumstances" surrounding the waiver of counsel, investigating the defendant's

11

apprehension of the nature of the charges, the statutory offenses, the range of allowable punishments, possible defenses, and all other facts "essential to a broad understanding of the whole matter."  Although the Sixth Circuit has approvingly cited *Von Moltke' s* guidelines, *see Fowler v. Collins*, 253 F.3d 244, 249 (6th Cir. 2001), no Supreme Court majority in any case has adopted those guidelines as constitutional requirements. *See Beatty v. Caruso*, 64 F.App'x. 945, 950, n. 5 (6th Cir. 2003).  As mentioned above, the failure of a district court in a federal criminal case to give a particular prophylactic warning and to conduct a specific inquiry before accepting a waiver of counsel does not in and of itself require reversal of a conviction. *McDowell*, 814 F.2d at 248-49.  In addition, the Supreme Court has yet to define the phrase "range of allowable punishments." *Akins v. Easterling*, 648 F.3d 380, 399 (6th Cir. 2011).  Because there is no clearly established law that requires a court to specifically advise a habeas petitioner of the penalties for the charged crimes before obtaining a waiver of counsel, the trial judge's alleged failure to warn Petitioner of the penalties he faced if convicted before allowing him to represent himself during portions of the trial would not entitle him to relief.

Petitioner is also not entitled to relief because he has made no showing that he was unaware of the possible penalties for the charged crimes before he waived his right to counsel during portions of his jury trial. *Akins*, 648 F.3d at 399; *see Tovar*, 541 U.S. at 92 ("[W]e note that [the defendant] has never claimed that he did not fully understand the charge or the range of punishment for the crime prior to pleading guilty.").  At the

12

beginning of trial, a plea offer was discussed pertaining to the maximum penalties for the various charges, other than the first-degree criminal sexual conduct charge. (Tr. 10/26/10, pp. 4-10).  Although Petitioner was not advised that he faced up to life imprisonment if convicted of the first-degree criminal sexual conduct charge, Petitioner failed to show that he was unaware of the penalties for this charge. *See U.S. v. Kerr*, 50 F.App'x. 230, 236-37 (6th Cir. 2002).  The trial judge specifically advised Petitioner that he could possibly faced a minimum sentence of 75 years if convicted of armed robbery and the underlying charges and sentenced as an habitual offender, fourth offense, on the armed robbery charge. (Tr. 10/26/2010, p. 7).  A specific warning on the record of the dangers and disadvantages of self-representation is not an absolute necessity in every case if the record shows that the defendant had the requisite knowledge from other sources. *See United States v. McDowell*, 814 F.2d at 248.  The trial judge's comments, prior to *voir dire*, clearly advised Petitioner of the penalties that he faced if convicted.

A habeas petitioner's mere speculation that he or she might not have waived his or her right to counsel is insufficient to meet the burden of showing that his or her waiver of counsel was not knowing and voluntary. *Akins*, 648 F.3d at 399.  The record clearly reflect that Petitioner intended to waive his right to counsel during certain portions of the proceedings.  Petitioner is not entitled to relief on his waiver of counsel claim.

### B. Claim # 2.  The failure to produce an endorsed *res gestae* witness.

Petitioner alleges that the prosecutor failed to exercise due diligence in locating and subpoenaing an endorsed *res gestae* witness, Larry Montgomery, for trial and should

not have been excused from producing him at trial.  Petitioner further contends that the trial court judge erred in failing to give a requested adverse inference instruction to the jury.

Federal law does not require the production of *res gestae* witnesses. *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001).  Michigan law's requirement that the prosecutors produce *res gestae* witnesses is simply a matter of state law whose enforcement is beyond the scope of federal habeas review. *See Collier v. Lafler,* 419 F.App'x. 555, 559 (6th Cir. 2011).  "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F.2d 192 (Table), 1988 WL 87710, *2 (6th Cir. Aug. 24, 1988)(citing to *United States v. Bryant*, 461 F.2d 912, 916 (6th Cir. 1972)).  Thus, whether a prosecutor exercised due diligence in attempting to locate a *res gestae* witness is outside the scope of federal habeas review. *Collier,* 419 F.App'x. at 559.

Petitioner has offered no evidence, other than speculation, that Mr. Montgomery would have provided exculpatory evidence.  Although Petitioner claims that Montgomery might have testified that Petitioner socialized with the victim on previous occasions, the victim testified that she did not know Petitioner and had never encountered him prior to when she awoke to Petitioner sitting on the floor of her bedroom, going through her purse.

The Michigan Court of Appeals rejected Petitioner's *res gestae* and related

14

instructional error claims as follows:

> On the fourth day of trial the prosecution informed the trial court that it was unable to locate Montgomery, who was an endorsed witness. Defense counsel requested a missing witness jury instruction. The prosecution requested that the trial court conduct a due diligence hearing. The trial court agreed, and the prosecution presented the testimony of Detective Randy Kimes. Kimes testified that before trial, Montgomery was subpoenaed, but failed to appear. After trial had commenced, he was assigned to locate Montgomery and personally serve him. He began by locating through a website previous addresses for Montgomery. Kimes then went to the most recent addresses, but Montgomery was not present at any of them. Kimes did speak with neighbors and showed a picture of Montgomery to them. None of the persons Kimes questioned knew Montgomery or recognized Montgomery from the photograph. Kimes also attempted to locate Montgomery through a driver's license, but he did not have a valid driver's license. In addition, Kimes called a cellular telephone number that he believed was Montgomery's. He testified that the person that answered identified himself as someone else. Next, Kimes reported that he searched the building at the apartment complex where defendant was found with Montgomery shortly after the incident, but again Montgomery was not to be found there. The prosecutor also informed the trial court that checks of local jails, the Department of Corrections, the district court records and a search for Montgomery using the Law Enforcement Information Network all failed to provide any leads regarding his whereabouts.

> After hearing these proofs, the trial court concluded that the prosecution exercised due diligence because the detective obtained Montgomery's mug shot and went to previous locations where he lived in an effort to locate him. Further, the trial court noted that defendant would probably have more information regarding Montgomery's location than law enforcement. Accordingly, the trial court denied defendant's request for the missing witness instruction.

> Having reviewed the evidence of due diligence presented below, we conclude that the trial court did not abuse its discretion in finding that the prosecution exercised due diligence. While we are troubled by the fact that no meaningful attempts to personally serve Montgomery were commenced until after trial had begun, we believe the record establishes that once efforts to locate Montgomery began, the attempts to find him were comprehensive. Consequently, the trial court's determination that the prosecution exercised

due diligence was not outside the principled range of outcomes.

Further, we note that even assuming the failure to give the missing witness jury instruction was an abuse of discretion, defendant has failed to explain how the trial court's refusal to give the missing witness instruction affected the outcome of the trial. "[A] preserved, nonconstitutional error is not a ground for reversal unless 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." Montgomery's testimony may have been harmful to defendant in light of the fact that he led police to the shotgun. Moreover, even if the jury were to have presumed that Montgomery's testimony would have been adverse to the prosecution, it is not more probable than not that it would have affected the outcome of the trial given the significant evidence establishing defendant's guilt.

*People v. Smith*, No. 302093, *8 (internal citations and footnote omitted).

Petitioner failed to show that Larry Montgomery would have provided exculpatory evidence; the prosecutor's failure to call him to testify at Petitioner's trial would not entitle Petitioner to habeas relief. Furthermore, the Michigan Court of Appeals noted that "Montgomery's testimony may have been harmful to defendant in light of the fact that he led police to the shotgun." *Id.* at 8. Petitioner is not entitled to relief on his endorsed witness/*res gestae* claim.

The Court rejects Petitioner's related claim that the jury should have been given the missing witness instruction.

A habeas petitioner is entitled to relief only if the defective jury instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). A federal court may not grant habeas relief on the ground that a jury instruction was incorrect under state law, *Estelle*, 502 U.S. at 71-72,

16

and "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

A criminal defendant does not have a clearly established federal right to a missing witness instruction. Petitioner therefore cannot obtain federal habeas relief based on the state court's failure to give an instruction to his jury regarding the prosecution's failure to produce witnesses. *See Stadler v. Curtin,* 682 F. Supp. 2d 807, 821-22 (E.D. Mich. 2010). Petitioner is not entitled to habeas relief on his second claim.

### C. Claim # 3. The reasonable doubt instruction.

Petitioner alleges that the trial court's reasonable doubt instruction was defective, because it deviated from the standard reasonable doubt instruction, CJI2d 3.2(3), by informing the jurors that they had to articulate a doubt. The instruction was not improper where the instructions, as a whole pertaining to reasonable doubt, were adequate.

The Michigan Court of Appeals found that during *voir dire* the trial court stated the following:

> So a reasonable doubt is just that, a doubt based on reason and common sense, okay. And where people get into trouble I think with the reasonable doubt is that they're not using their common sense; and, if you say you have a doubt, then you should be able to articulate from the evidence the basis for that doubt . . . . [F]irst of all, you have a doubt of his guilt; and then, if you have that doubt, is that doubt reasonable, is it based on reason and common sense. And, if it is, then you articulate it. And that's what I consider a reasonable doubt.

After a jury panel was sworn the trial court formally instructed the jury on the meaning of reasonable doubt. The trial court stated:

> A reasonable doubt is a fair, honest doubt growing out of the evidence or lack of evidence. It is not merely an imaginary or possible doubt, but a doubt based on reason and common sense. A reasonable doubt is just that, a doubt that is reasonable after a careful and considered evaluation of all the evidence and circumstances in the case.

> The trial court gave the jury an identical instruction on the meaning of reasonable doubt before sending the jury to deliberate.

*People v. Smith,* No. 302093, *8.

Jury instructions must be read in their entirety to ensure that the instructions, read as a whole, correctly convey the reasonable doubt concept to the jury. *Ferrazza v. Tessmer*, 36 F. Supp. 2d 965, 973 (E.D. Mich. 1999). The proper inquiry for a court reviewing a reasonable doubt instruction is not whether the jury instruction could have been applied unconstitutionally, but whether there is a reasonable likelihood that the jury did apply the jury instruction in an unconstitutional manner. *Victor v. Nebraska*, 511 U.S. 1, 6 (1994). The Due Process Clause of the Fourteenth Amendment neither prohibits a trial court from defining reasonable doubt nor does it require it to define reasonable doubt as a matter of course, so long as the trial court instructs the jury on the necessity that the defendant's guilt must be proven beyond a reasonable doubt. *Victor,* 511 U.S. at 5; *Ferrazza,* 36 F. Supp. 2d at 973.

When viewed in their entirety, the trial court's instructions adequately informed the jurors about the concept of reasonable doubt. Although the trial court's statement made during *voir dire* of "then you articulate it," may seem problematic, when viewed within the context that it was made, it appears that the trial court judge was merely

18

explaining to the jurors that any doubt must be "fair, honest and reasonable," and not based on a fictitious or imaginary doubt. *See Fluellen v. Walker*, 41 F.App'x 497, 500 (2d Cir. 2002)(reasonable doubt instruction given in state murder trial, providing that juror "would have to articulate" reason for doubts held by juror, did not violate due process clause, even if such instruction was not encouraged and court also used allegedly improper phrase "moral certainty" in explaining circumstantial evidence, in view of instructions as a whole, which left no doubt that defendant had to be presumed innocent).

When viewed in the context of the instructions as a whole, the trial court's instruction did not lower the prosecution's burden of proof because the instruction merely conveyed to the jury that a reasonable doubt must be based on reason, as opposed to fancy, whim, or conjecture. *See e.g. Paluskas v. Bock,* 410 F. Supp. 2d 602, 612 (E.D. Mich. 2006).  The trial judge twice instructed the jurors on the concept of reasonable doubt and emphasized that the prosecutor bore the burden of proof, that Petitioner is presumed innocent, and "This presumption continues throughout the trial, and entitles the defendant to a verdict of not guilty, unless you are satisfied beyond a reasonable doubt that he is guilty." (Tr. 11/9/2010, pp. 81-82).

The instructions as a whole adequately informed the jurors of the reasonable doubt concept.  Petitioner is not entitled to habeas relief on his third claim. *Paluskas,* 410 F. Supp. 2d at 614; *Ferrazza,* 36 F. Supp. 2d at 976.

### D.  Claim # 4.  Other acts evidence.

Petitioner alleges that he was denied a fair trial when the judge allowed into

evidence other acts evidence to show a common scheme, plan or system. Petitioner claims that the prior conviction to an offense that occurred 18 years earlier was too old to be probative.

Petitioner's claim that the state court violated M.R.E. 404(b) or any other provision of state law by admitting evidence of his prior sexual acts is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F.3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003); *see also Adams v. Smith,* 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Given the lack of holdings by the Supreme Court on the issue of whether a state court violates a habeas petitioner's due process rights by the admission of evidence to establish a habeas petitioner's propensity to commit criminal acts, the Michigan Court of Appeals' rejection of Petitioner's claim was not an unreasonable application of clearly established federal

20

law. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 (2006).  Petitioner is not entitled to relief on his fourth claim.

## IV.  Conclusion

The Court denies the petition for a writ of habeas corpus.  The Court also denies a certificate of appealability to Petitioner.  To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability; he failed to make a substantial showing of the denial of a federal constitutional right. *See Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

Although this Court denies a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is lower than the standard for

certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002).  While a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).  "Good faith" requires a showing that the issues raised are not frivolous, it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.  ORDER

The Court **DENIES** the Petition for a Writ of Habeas Corpus and a Certificate of Appealability.

Petitioner is **GRANTED** leave to appeal *in forma pauperis.*


S/Victoria A. Roberts
**HON. VICTORIA A. ROBERTS**
**UNITED STATES DISTRICT JUDGE**

**Dated:** February 28, 2017